UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANICE KAY JOHNSTON,                    Case No. 13-14443

                    Plaintiff,          Patrick J. Duggan
v.                                      United States District Judge

COMMISSIONER OF SOCIAL                  Michael Hluchaniuk
SECURITY,                               United States Magistrate Judge

                    Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 13, 15)**

## I.   PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On October 23, 2013, plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Patrick J. Duggan referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkts. 13, 15).  The cross-motions are now ready for report and recommendation.

B.     Administrative Proceedings

Plaintiff filed the instant claim for a period of disability and disability insurance benefits on January 20, 2011, alleging disability beginning January 1, 2007.  (Tr. 12).  The Commissioner initially denied plaintiff's disability application on April 21, 2011.  (Tr. 50-58).  Thereafter, plaintiff requested an administrative hearing, and on April 17, 2012, she appeared with counsel before Administrative Law Judge ("ALJ") John J. Rabaut, who considered her case de novo.  (Tr. 27-49).  In a May 7, 2012 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 12-22).  The ALJ's decision became the final decision of the Commissioner on August 13, 2012, when the Social Security Administration's Appeals Council denied plaintiff's request for review.  (Tr. 6-11).  Plaintiff filed this suit on October 23, 2013.  (Dkt. 1).

For the reasons set forth below, the Court concludes that substantial evidence supports the administrative law judge's residual functional capacity ("RFC") decision.  Relatedly, the Court concludes that there was no error in the questioning of the vocational expert.  Finally, the Court concludes that the ALJ properly assessed plaintiff's credibility.  The Court therefore **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 13) be **DENIED**, that Defendant's Motion for Summary Judgment (Dkt. 15) be **GRANTED**, and that,

2

pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social

Security be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff had past relevant work as a caregiver, parts salvager and

maintenance worker.  (Tr. 20).  Plaintiff testified that her past relevant work

required her to lift up to 80 pounds and other labor-intensive jobs.  (*Id*.)  The ALJ

applied the five-step disability analysis to plaintiff's claims and found at step one

that between the alleged onset date (January 1, 2007) and the last date insured

(September 30, 2008), plaintiff did not engage in any substantial gainful activity.

(Tr. 14).  At step two, the ALJ found that plaintiff had the following severe

impairments: diverticulitis, irritable bowel syndrome, colitis, diverticulosis, and

anxiety.[1]  (*Id*.)  At step three, the ALJ found that plaintiff did not have an

impairment or combination of impairments that met or equaled one of the listings

in the regulations.  (Tr. 16).

The ALJ determined that plaintiff had the residual functional capacity

("RFC") to perform:

---

[1]  The claimant also alleged back pain as a severe impairment.  However, the ALJ
concluded that the plaintiff's back pain did not commence until the Spring of 2009, well after the
date last insured.  (Tr. 14.)  Therefore, the ALJ did not consider plaintiff's back pain a severe
impairment during the relevant period for the purposes of the decision.  (*Id*.)

3

> sedentary work as defined in 20 CFR 404.1567(a) except
> that she must be allowed to alternate between sitting and
> standing at will. She is unable to climb ladders, ropes, or
> scaffolds, and she is able to climb ramps or stairs,
> balance, stoop, crouch, kneel, and crawl no more than
> occasionally. The claimant must avoid all exposure to
> vibrations, moving machinery, and unprotected heights.
> Her work must be low-stress, defined as only occasional
> decision-making requirements and only occasional
> changes in the work setting, with no more than
> occasional interaction with the general public, and she
> will need access to bathrooms.

(Tr. 17). At step four, the ALJ determined that plaintiff was not capable of

performing any past relevant work. (Tr. 20). The vocational expert who testified

at the administrative hearing agreed, concluding that plaintiff could not return to

her past work. (*Id.*) At step five, the ALJ concluded that based on plaintiff's age,

education, work experience and RFC, there were jobs that existed in significant

numbers in the national economy that plaintiff could have performed and,

therefore, she was not under a disability at any time from the alleged onset date

through the date last insured. (Tr. 21-22).

    B.    <u>Plaintiff's Claims of Error</u>

        1.    The RFC is not supported by substantial evidence

Plaintiff submits two related claims; first, plaintiff argues that the residual

functional capacity is not supported by the substantial weight of the evidence in

violation of 20 C.F.R. § 416.926(c). (Dkt.13, Pl.'s Mot. Summ. J. at 12.) Second,

4

plaintiff claims that the ALJ submitted an improper hypothetical to the vocational expert ("VE") that did not portray all aspects of her limitations and subsequently erred by relying on that testimony.  (*Id.*)

Plaintiff argues that "[i]f the Secretary seeks to rely on VE testimony to carry his burden of proving the existence of a substantial number of jobs that plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes the plaintiff in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant."  (Dkt. 13, Pl.'s Mot. Summ. J. at 12; citing *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994); *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).  In this case, plaintiff contends that while the ALJ concluded that plaintiff had "moderate" limitations in concentration, persistence or pace, he did not adequately reflect those limitations in the RFC, or in his hypothetical to the VE.  (Dkt.13, Pl.'s Mot. Summ. J. at 14).

Notwithstanding, plaintiff says that the vocational expert's opinion supports a finding of disability that the ALJ disregarded.  The VE testified that if plaintiff needed to take two partial days off per month all employment would be precluded.  (Dkt. 13, Pl.'s Mot. Summ. J. at 14).  While plaintiff contends that the ALJ failed

5

to elicit testimony regarding how much time off someone with "moderate" limitations needs, plaintiff cites precedent from this court including *Edwards v. Barnhart*, 383 F. Supp. 2d 920 (E.D. Mich. 2005), *Bankston v. Comm'r*, 127 F. Supp. 2d 820 (E.D. Mich. 2000), and *Benton v. Comm'r of Soc. Sec.*, 511 F. Supp. 2d 842 (E. D. Mich. 2007), to show that the ALJ erred by not including her "moderate" limitations in concentration, persistence or pace in the RFC determination and that at the very least a remand is required to allow the ALJ to accommodate for her limitations and retake VE testimony at step five. (Dkt.13, Pl.'s Mot. Summ. J. at 13-15.)

       2.     The ALJ impermissibly evaluated plaintiff's credibility

The ALJ made impermissible and conclusory credibility findings. (Dkt.13, Pl.'s Mot. Summ. J. at 15-16). Plaintiff contends that she had consistent, medically supported complaints of pain to which the ALJ did not give proper credit. (*Id*.) Moreover, plaintiff indicates that the ALJ failed to properly inquire as to the nature and extent of plaintiff's pain and limitations at the hearing despite plaintiff's multiple hospitalizations prior to the date last insured together with findings of severe gastrointestinal disorder and numerous procedures. (*Id*.) Further, plaintiff claims that the ALJ failed to seek information regarding plaintiff's health insurance and financial ability which limited her ability to obtain additional medical treatment. (*Id*.)

6

C.   The Commissioner's Motion for Summary Judgment

1.   Substantial evidence supports the RFC finding

The Commissioner argues that the ALJ concluded that plaintiff had "'no more than moderate' deficiencies of concentration, persistence, or pace, and that plaintiff retained the mental ability to perform unskilled and low-stress work, defined as work that involved only 'occasional' decision-making, public contact, and workplace changes." (Dkt. 15, Def.'s Mot. Summ. J. at 11). Citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), the Commissioner argues that an ALJ may rely on VE testimony if the hypothetical question to the VE includes the ALJ's RFC finding, even though it does not include the ALJ's "B" criteria findings (i.e., the findings pertaining to daily activities, social functioning, concentration, persistence, or pace, and episodes of decompensation that are evaluated by the ALJ under the psychiatric review technique procedures set forth in 20 C.F.R. §§ 404.1520a(c)-(d)). *See Smith*, 307 F.3d at 379 (ALJ decision affirmed where ALJ relied on VE testimony in response to hypothetical that contained ALJ's RFC finding, but did not include "B" criteria conclusion that claimant "often" had deficiencies of concentration, persistence, or pace). The Commissioner points out that the mental impairment regulations were revised after *Smith*, but contends that this Court recognizes that the term "moderate," which is used to described limitations in the current regulations, parallels the term "often,"

7

which was used to describe limitations in the previous regulations.  (Def.'s Mot.

Summ. J. at 12; citing *Edwards v. Barnhart*, 383 F. Supp.2d 920, 930 (E.D. Mich.

2005)).

The Commissioner also argues that plaintiff's argument on this point is

undeveloped.  Specifically, the Commissioner contends that plaintiff does not

specify what component of "moderate" problems with concentration the RFC

failed to accommodate.  (Dkt. 15, Def.'s Mot. Summ. J. at 12).  The first

component concerns the frequency of the problem, and the second component

concerns the level of sophistication or intensity of work that can be done.  (*Id*.)

Because plaintiff failed to flesh out her argument, the Commissioner contends that

she has waived the issue.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th

Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some

effort at developed argumentation, are deemed waived. It is not sufficient for a

party to mention a possible argument in the most skeletal way, leaving the court to

put flesh on its bones.").

Plaintiff claims that she should have been found disabled based on the  VE's

testimony that no jobs would exist for someone that needed "more than even two

unscheduled days of work a month off or would require even two additional

partial days like having to leave work late or leave work early or would require[]

extended breaks throughout the middle of the day, more than are traditionally

8

granted in an unskilled work environment[.]" (Tr. 45-46).  However, the Commissioner contends that there is no evidence to support the hypothetical limitations concerning work absences, partial days, and extended work breaks. Thus, says the Commissioner, the ALJ was not required to rely on the VE's response to that hypothetical question.  (Def.'s Mot. Summ. J. at 13-14).

The Commissioner argues that the RFC adequately accounts for plaintiff's moderate CPP limitations.  (Def's Mot. Summ. J. at 14-16). The Commissioner notes that State agency psychologist, Dr. James Garner, who reviewed the record at the initial level indicated that there was "insufficient evidence" concerning plaintiff's abilities in the "B" criteria areas of daily activities, social functioning, concentration, persistence or pace, and episodes of decompensation.  (Dkt. 15, Def.'s Mot. Summ. J. at 16; citing Tr. 2, 54).  As such, according to the Commissioner, the ALJ reasonably concluded that Plaintiff could perform low-stress work, defined as work that involved only "occasional" public contact, "occasional" decision-making, and "occasional" workplace changes (Def.'s Mot. Summ. J. at 16; citing Tr. 17).

The Commissioner also contends that the RFC adequately accounts for plaintiff's physical limitations.  (Def.'s Mot. Summ. J. at 16).  The RFC incorporated plaintiff's abdominal complaints into the RFC indicating that plaintiff "will need access to bathrooms."  (*Id*.)  The Commissioner takes issue

9

with plaintiff's characterization of the hospitilization record and contends that

there was just one hospitalization during the relevant period, on July 30-31, 2008.[2]

(*Id*. at 17.)  The Commissioner contends that all other overnight hospitalizations

occurred from November 2005 through June 2006 (prior to plaintiff's January

2007 alleged disability onset), thus plaintiff's reliance on them is misplaced.  (*Id*.)

        The Commissioner also argues that the ALJ's failure to question her about

her condition prior to her last date insured is not reversible error.  (Def.'s Mot.

Summ. J. at 17-18).  The Commissioner contends that plaintiff was represented by

counsel who had ample time and opportunity to develop this testimony at the

hearing.  (*Id*. at 17). Moreover, plaintiff does not allege that further questioning

would show that her impairments were different or more limiting at that time, as

compared to the time of the hearing.  (*Id*.)  As such, the Commissioner contends

that plaintiff was not harmed by the ALJ's questioning at the hearing.  (*Id*.)

            2.      The ALJ properly evaluated plaintiff's credibility

        The Commissioner argues that the ALJ engaged in an adequate credibility

discussion and that the ALJ's findings were supported by substantial evidence.

(Dkt. 15, Def.'s Mot. Summ. J. at 18).  Specifically, the Commissioner contends

---

        [2]  This hospitalization concluded with the identification of a hernia.  (Tr. 248).  The
Commissioner points out that shortly thereafter, plaintiff had two, same-day procedures related to
the hernia (a hernia repair on August 7, 2008, and a seroma drainage at the hernia incision site on
September 8, 2008), but these did not result in overnight stays and they were unrelated to
plaintiff's diverticulitis.  (Def.'s Mot. Summ. J. at 17 & n.4; citing Tr. 245-46, 333-34).

that the ALJ evaluated plaintiff's credibility in accordance with the applicable regulations and provided good reasons why he discounted her credibility. (Tr. 19). Therefore, the Commissioner argues that the ALJ's credibility determination should not be disturbed.

The ALJ stated that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than those reported [in the RFC.]" (Def.'s Mot. Summ. J. at 19; Tr. 19). Plaintiff claims that the ALJ did not adequately indicate that plaintiff was exaggerating her symptoms. However, the Commissioner points out that in declining to fully credit plaintiff's allegations, the ALJ also opined:

> that 'consideration of the factors described in 20 CFR 404.1529(c)(3) and 416.929(c)(3) and Social Security Ruling 96-7p also leads to a conclusion that the claimant's allegations of disabling symptoms and limitations cannot be accepted' and that '[t]he claimant's subjective complaints of disabling pain and symptoms are not entirely credible and not fully supported by objective medical evidence and other subjective factors' (Tr. 19). After discussing the claimant's treatment and lack of adverse medication side effects, the ALJ stated '[o]verall, the medical record suggests that the claimant;'s impairments, prior to her date last insured, are not as severe or limiting as alleged.' (Tr. 19). Furthermore, after discussing Plaintiff's daily activities, the ALJ stated '[t]hese abilities also detract from the credibility of the claimant's subjective complaints that she is unable to perform work at any exertional or skill

level.'

(Dkt. 15, Def.'s Mot. Summ. J. at 19; quoting Tr. 19-20).  Therefore, according to

the Commissioner, and contrary to plaintiff's contention, the ALJ repeatedly

indicated that plaintiff overstated her symptoms and functional limitations.

Because an ALJ's credibility decisions should be accorded great weight, and

because the ALJ's credibility decision here is supported by substantial evidence, it

should be affirmed. (*Id*. at 21-22).

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.

1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters*, 127 F.3d at 528.  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However,

13

the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of*

14

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

   B.   <u>Governing Law</u>

   The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch,

15

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

16

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis</u>

        1.    The RFC is Supported by Substantial Evidence

In this case, the ALJ determined that plaintiff had the following severe impairments: diverticulitis, irritable bowel syndrome, colitis, diverticulosis, and anxiety. (Tr. 14). Significant to this case, the ALJ also considered whether the "B" criteria were satisfied. (Tr. 16). While the ALJ concluded that the "severity of the claimant's mental impairments, considered singly and in combination, did not meet or equal the criteria of listing 12.06[,]" he did find that "[w]ith regard to concentration, persistence or pace, the claimant had no more than moderate difficulties." (Tr. 17). Plaintiff argues that the RFC does not adequately account for the ALJ's finding that she had "moderate" difficulties in concentration, persistence or pace. Plaintiff relatedly argues that the ALJ's hypothetical to the VE was flawed because it did not accurately describe plaintiff's "moderate" limitations in concentration, persistence or pace.

Here, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR
> 404.1567(a) except that she must be allowed to alternate
> between sitting and standing at will. She is unable to
> climb ladders, ropes, or scaffolds, and she is able to
> climb ramps or stairs, balance, stoop, crouch, kneel, and
> crawl no more than occasionally. The claimant must
> avoid all exposure to vibrations, moving machinery, and
> unprotected heights. Her work must be low-stress,
> defined as only occasional decision-making requirements
> and only occasional changes in the work setting, with no
> more than occasional interaction with the general public,
> and she will need access to bathrooms.

(Tr. 17).

This court has determined that "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled, routine work' but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC." *Smith v. Comm'r of Soc. Sec.*, No. 13-10862, 2013 WL 6094745, at *8 (E.D. Mich. Nov. 20, 2013), *citing Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008); *see also Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010). In other words,

> Taken in isolation, the hypothetical limitations
> consisting of '[s]imple routine tasks in a low stress
> environment' and 'minimal changes in the work place
> setting' might appear inadequate to account for
> 'moderate' concentrational and pacing deficiencies.
> However, the record as a whole indicates that the
> hypothetical question and the ALJ's finding of

19

"moderate" limitations findings are not incompatible.

*Hess*, 2008 WL 2478325, at *7; *see also Lewicki*, 2010 WL 3905375, at *3.  In

*Hess*, for example, even though the ALJ omitted a concentration-based limitation

from the hypothetical, this court did not remand because the entire record

supported a finding that plaintiff could perform unskilled work on a sustained

basis. *Hess*, 2008 WL 2478325, at *8.

In this case, no physician opined on plaintiff's mental impairments,

including her functional limitation with respect to concentration, persistence or

pace.  (Tr. 54).  The ALJ notes that he made his "B" criteria conclusions, namely

that plaintiff has "moderate" limitations in concentration, persistence or pace,

based on plaintiff's self-report, as well as the following:

> [a]dditionally, despite allegations of anxiety and taking
> anti-anxiety medication, the claimant has rarely
> complained of anxious symptoms. She did not seek or
> receive any mental health treatment, she never required
> psychiatric hospitalization, and her treatment is limited
> to medication prescribed by her primary care physician. I
> also considered these factors when determining that the
> claimant's impairments do not preclude her from
> performing all work.

 (Tr. 17, 19-20, 191-98).  Despite the sparse evidence that plaintiff suffered from a

physiological impairment, the ALJ concluded that plaintiff had "moderate"

limitations in concentration, persistence or pace and limited her to sedentary work

that is "low-stress", defined as requiring only "occasional" decision making

requirements and only "occasional" changes in the work setting, with no more than "occasional" interaction with the general public. (Tr. 17). Plaintiff claims that while the ALJ concluded that plaintiff had "moderate" restrictions relating to her abilities relating to concentration, persistence or pace, the ALJ did not adequately reflect those limitations in the RFC. (Dkt.13, Pl.'s Mot. Summ. J. at 14). Relatedly, plaintiff also claims that as a result of the inaccurate RFC, the ALJ posed a flawed hypothetical question to the vocational expert that did not account for her "moderate" limitations in concentration, persistence or pace.

Because no talismanic language is required, the court must look to the record as a whole. *See Smith*, No. 13-10862, 2013 WL at *8. The court agrees with the Commissioner that plaintiff does not explain why the facts of her case require a more detailed RFC and/or hypothetical to adequately account for her moderate limitations in concentration, persistence or pace. Indeed, State agency psychologist, Dr. Garner, was not able to offer an opinion regarding plaintiff's mental impairments, including a functional limitation with respect to concentration, persistence or pace, because of a lack of evidence in the record prior to her last date insured. (Tr. 54). To the contrary of not accounting for plaintiff's concentration, persistence or pace limitations, it is the court's opinion that the ALJ gave plaintiff every benefit of the doubt when assessing the "B" criteria, taking into account plaintiff's prescription records, physician records, a

self-report and plaintiff's testimony at the hearing.  (Tr. 17, 19).

Plaintiff also claims that the ALJ erred when he did not find her disabled when the VE testified that no jobs would exist if plaintiff were to require "more than even two unscheduled days of work a month off or would require even two additional partial days like having to leave work late or leave work early or would require[] extended breaks throughout the middle of the day, more than are traditionally granted in an unskilled work environment."  (Tr. 44-45).  The court agrees with the Commissioner that the ALJ was not required to accept the VE's testimony on this point because no evidence supported plaintiff's claim that she would require work absences, partial days, or extended work breaks.  *See McCormick v. Sec'y of Health & Human Servs.*, 861 F.32d 998, 1002-03 (6th Cir. 1988) (A hypothetical question or RFC finding need only include those limitations that are supported by the record).  Plaintiff did not direct the court to any evidence on this point, nor did the undersigned find it in conducting an independent review.

For the reasons above, the court concludes that the RFC and subsequent hypothetical to the vocational expert were both supported by substantial evidence.

2.      The ALJ Properly Assessed Plaintiff's Credibility

Plaintiff argues that the ALJ erred in concluding that her testimony as to the intensity and persistence of her symptoms associated with her impairments was not entirely credible.  As the relevant Social Security regulations make clear;

22

however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929. Instead, the Sixth Circuit has repeatedly held that "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. 2004); *see also Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").

"It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not

23

required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1529. Consistency between the plaintiff's subjective complaints and the record evidence 'tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

Here, the undersigned agrees with the Commissioner that the ALJ's conclusions regarding plaintiff's claims of disabling limitations are supported by substantial evidence. As the Commissioner points out, the regulations squarely contemplate discounting a claimant's credibility based on consideration of his minimal treatment history. *See* SSR 96-7p, 1996 WL 374186, at *7; 20 C.F.R.

24

§§ 404.1529(c)(3), 416.923(c)(3).  Here, the Commissioner rightly points out that plaintiff only had one, overnight hospitalization during the relevant period, where a hernia was treated.  (Tr. 17; 248).  Moreover, as discussed above, there was not enough evidence regarding plaintiff's mental limitations that the State agency psychologist was unable to render an opinion on plaintiff's functional limitations.  (Tr. 54).  Further, despite allegations of anxiety and plaintiff taking anti-anxiety medications, the ALJ noted that the record was devoid of complaints of anxious symptoms.  (Tr. 19).  Plaintiff additionally did not seek or receive any mental health treatment or require psychiatric hospitalization.  (Tr. 20).  The ALJ also noted that plaintiff's mental health treatment was limited to medication prescribed by her primary care physician.  (*Id.*)

The ALJ also considered plaintiff's testimony regarding her daily activities to assess her credibility.  It is well-settled that an ALJ can consider this information in assessing a claimant's credibility.  20 C.F.R. § 404.1529(c)(3)(I); *see also Warner*, 375 F.3d at 392 (recognizing that in nearly all cases, an evaluation of a claimant's daily activities is relevant to the evaluation of subjective complaints and ultimately, to the determination of disability); *Heston*, 245 F.3d at 536 (an ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds).  Here, the ALJ noted

that plaintiff was able to carry out a number of activities of daily living including "prepar[ing] simple meals, [] light housework, and driv[ing] a car. She also spends time with family members and friends, goes to public places, and concentrate[s] well enough to follow the plots of books and television shows." (Tr. 20). The ALJ determined that these activities "detract" from plaintiff's credibility that she is unable to perform work at any exertional or skill level. (*Id.*)

In sum, the ALJ evaluated the extent to which the severity of plaintiff's pain could reasonably be accepted as consistent with the medical evidence, and found plaintiff's testimony not fully credible. It is well-settled that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. For the reasons stated above, the undersigned concludes that there is substantial evidence in the record to support the ALJ's credibility findings here.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 6, 2015                    s/Michael Hluchaniuk
                                       Michael Hluchaniuk
                                       United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 6, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                       s/Tammy Hallwood
                                       Case Manager
                                       (810) 341-7887
                                       tammy_hallwood@mied.uscourts.gov

28